IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
SEP - 7 2016
CLERK, US DISTRICT COURT
NORFOLK, VA

SELENA N. STEWART, )
)
      Plaintiff, )
)
v. ) CASE NO.: 2:16cv531
)
RED ROBIN INTERNATIONAL, INC., )
and )
JOHN ACOSTA, )
)
      Defendant.

SERVE:  Corporation Service Company
Registered Agent for Red Robin International, Inc.
Bank of America Center, 16th Floor
1111 East Main Street
Richmond, VA 23219

John Acosta
5209 Kirton Court
Virginia Beach, VA 23455

## COMPLAINT

Plaintiff, Selena N. Stewart, by counsel, for her Complaint against Defendants, Red Robin International, Inc., and John Acosta alleges as follows:

### PARTIES

1. Plaintiff, Selena N. Stewart, a natural person, was at all times relevant hereto a citizen of Moyock, North Carolina.

2. Defendant Red Robin International, Inc. is a corporation organized in Nevada doing business under the laws of the Commonwealth of Virginia with its headquarters located in Colorado.

3. Defendant John Acosta, a natural person, was at all times relevant hereto a citizen of Virginia Beach, Virginia.

## JURISDICTION AND VENUE

4. This is an action brought by Plaintiff for damages pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq., as well as the United States Constitution, Fourteenth Amendment.

5. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §2000e et seq.

6. At the time of the discrimination and retaliation, Defendant Red Robin International, Inc. (herein referred to as "Defendant Red Robin") was an employer operating throughout the United States with a restaurant located in Chesapeake, Virginia. At all times relevant hereto, Defendant engaged in an industry affecting commerce and employed more than five hundred (500) regular employees.

7. At the time of his conduct relevant to this suit, Defendant John Acosta (herein referred to as "Defendant Acosta") was a citizen of Virginia Beach, Virginia.

8. Prior to instituting this suit, Plaintiff timely filed an administrative claim with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC).

9. The EEOC failed to resolve the claim and issued Plaintiff a right-to-sue letter dated June 10, 2016. A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "A."

10. This Court also has supplemental jurisdiction over those portions of the Complaint that arise under state law pursuant to 28 U.S.C. §1367(a).

11. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C.

§1391(c).

## FACTS COMMON TO ALL CLAIMS

### Initial Employment History

12. Defendant Red Robin hired Plaintiff, a female, to work as a restaurant server in Columbus, Ohio in 2006.

13. Defendant Red Robin promoted Plaintiff to Assistant General Manager in 2008.

14. Plaintiff voluntarily left the employment of Defendant Red Robin in 2009 but returned ten months later when Defendant Red Robin recruited her to return.

15. Defendant Red Robin hired Plaintiff in 2009 to serve as an Assistant General Manager in the restaurant located at 1024 Eden Way North, Chesapeake, VA 23320.

16. In 2013, Plaintiff earned a promotion to General Manager of that same Red Robin restaurant.

17. Throughout her tenure as an employee, Plaintiff earned a number of awards and recognitions, and her performance was exemplary as measured through various metrics.

18. However, at some point, Plaintiff began to report to Defendant Acosta.

19. Defendant Acosta was the Regional Operations Director of Defendant Red Robin for the region which included the restaurant where Plaintiff was the manager.

### Discriminatory Behavior

20. Defendant Acosta treated Plaintiff, a female General Manager, significantly worse than he treated the male General Managers of other Red Robin restaurants for which he was responsible.

21. Prior to her promotion, Plaintiff was forced to write a business plan; upon information and belief, no other General Manager in the region was required to perform this task.

22. Defendant Acosta offered coaching, guidance, support, assessment training, and preparation to male General Managers which he denied to Plaintiff without good cause.

23. For example, Defendant Acosta refused to engage in personal meetings with Plaintiff to discuss and evaluate her performance although he did so with the male General Managers.

24. Defendant Acosta refused to visit Plaintiff's restaurant when she was working, although he would visit the other restaurants when their male General Managers were present.

25. Plaintiff repeatedly requested that Defendant Acosta provide the same support and assistance he provided to the male General Managers regarding the documentation of her team members' performance related issues.

26. However, Defendant Acosta refused to provide Plaintiff such assistance.

27. Plaintiff was required to use "auto terms" and "pro-active unemployment forms," and male General Managers were not required to use those tools.

## Unequal Opportunities

28. Prior to being promoted to a General Manager, Plaintiff requested that Defendant Acosta allow her attend various restaurant visits and inspections so that she could further her education and career opportunities.

29. Defendant Acosta stated that only General Managers could go on such excursions.

30. When Plaintiff was promoted to General Manager, she reiterated her request to attend various restaurant visits and inspections with Defendant Acosta to help her performance.

4

31. However, instead of allowing Plaintiff to attend, Defendant Acosta instead elected to take Plaintiff's support staff without good cause.

### Differential Treatment

32. During a conference for the leadership management team, Defendant Acosta required that Plaintiff attend a "Women in Leadership" class during her lunch break while no other General Managers were required to attend a class.

33. At the conclusion of this class, Plaintiff discovered Defendant Acosta and the other male general managers drinking alcohol poolside wherein Defendant Acosta laughed upon seeing Plaintiff and asked her "You learn anything?" in a joking manner.

### Discriminatory Discipline

34. Male General Managers were allowed to step down to become an assistant General Manager for performance related reasons; Plaintiff was never provided this opportunity.

35. Instead, as will be detailed shortly, Defendant Acosta attempted to place Plaintiff on a performance action plan in retaliation for Plaintiff asserting her rights.

### Retaliation

36. Defendant Acosta denied Plaintiff's request to host a TFLG Celebration even though she had been a General Manager for over one year.

37. Plaintiff contacted Human Resources to express her concern that she believed she was not allowed to host this activity due to her sex.

38. Upon information and belief, Human Resources and/or upper management instructed Defendant Acosta to allow Plaintiff to host this activity.

39. The tradition at these functions is to begin with a fun icebreaking activity.

40. However, in retaliation for Plaintiff's reporting of his discriminatory behavior, Defendant Acosta instead directed each of the employees who attended the activity to find five things wrong with Plaintiff's restaurant.

41. Plaintiff attended multiple TFLG functions that were hosted by male General Managers and at none of those was the first activity active criticism of the restaurant.

42. This action was taken intentionally by Defendant Acosta to punish, humiliate, and embarrass Plaintiff for her reporting of his discriminatory behavior.

## Final Retaliation and Termination

43. Plaintiff notified Shay Carver, Human Resources representative of Defendant Red Robin, of all of the above-referenced and other differential and disparate treatment in or about October of 2014.

44. Defendant Acosta retaliated against Plaintiff by attempting to place her on a performance action plan shortly thereafter.

45. Plaintiff reported Defendant Acosta's action to Ms. Carver and she was told that the attempted action plan would be revised as it was materially false as written.

46. However, Defendant Red Robin never amended the action plan.

47. Shortly thereafter, Plaintiff was terminated, in part for allegedly failing to use the aforementioned auto terms" and "pro-active unemployment forms" which male general managers were not required to use.

48. There were other general managers, all male, whose performance was equal to or worse than Plaintiff that were not terminated.

49. The instances of discrimination and unequal treatment are not limited to the specific episodes recounted above.

50. As a result of Defendants' conduct, Plaintiff has been damaged, has been denied her due compensation, and has suffered anguish, humiliation, severe financial harm and mental distress.

## COUNT I - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1991

51. Plaintiff incorporates paragraphs 1-50 as if fully incorporated herein.

52. Plaintiff is female and a member of a protected class.

53. Plaintiff was treated differently than her male coworkers by Defendants solely on the basis of her sex.

54. Plaintiff was terminated for performance by Defendants that when measured objectively was equal to or superior to the performance of male coworkers.

55. Plaintiff was retaliated against by Defendant Red Robin for reporting the discriminatory actions of Defendant Acosta, ultimately losing her job.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT

56. Plaintiff incorporates paragraphs 1-55 as if fully incorporated herein.

57. Defendant Acosta was aware of Plaintiff's relationship with Defendant Red Robin.

58. Defendant Acosta intentionally used improper methods to interfere with Plaintiff's relationship with Defendant Red Robin.

59. Plaintiff's relationship with Defendant Red Robin would have continued in the absence of the conduct of Defendant Acosta and other representatives of Defendant Red Robin.

60. Defendant Acosta's actions caused Plaintiff to suffer significant and severe harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Selena N. Stewart, prays for the following relief:

Entry of judgment in favor of Plaintiff and against Defendants for

a. Back Pay

b. Front Pay

c. Compensatory Damages,

d. Punitive Damages,

e. Attorney's fees and court costs associated with this suit; and

f. Other such relief as may be appropriate to effectuate the purposes of the Civil Rights Act of 1991.

**TRIAL BY JURY OF ALL ISSUES IS REQUESTED**


SELENA N. STEWART

_____
Gregory William Klein, Esquire
Virginia Bar No.: 73110
Attorney for SELENA N. STEWART
TAYLOR WALKER P.C.
555 Main Street, Suite 1300
Norfolk, VA 23510
Voice – (757) 625-7300
Fax – (757) 625-1504
gklein@taylorwalkerlaw.com